UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MARY WEST, *et ano.*, on behalf of              :
themselves and all others similarly situated,

                Plaintiffs,              :

         -against-              :

MOE'S FRANCHISOR, LLC,              :

                Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

15cv2846

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs Mary West and Patricia Diamond, on behalf of themselves and a putative class of other blind individuals, bring discrimination claims under Title III of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") against Defendant Moe's Franchisor, LLC ("Moe's").  The gravamen of Plaintiffs' complaint is that the touchscreen beverage dispensers in Moe's restaurants deny Plaintiffs a full and equal opportunity to enjoy the services defendants provide.

        Moe's seeks to dismiss the Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendant's motion to dismiss is granted.

## BACKGROUND

        The following facts are gleaned from the Amended Complaint, and assumed to be

true for purposes of this motion. Moe's is "a national company" that "owns, operates, franchises, leases. . . . , and/or maintains" more than 500 restaurants throughout the United States, with approximately 50 in New York. (Am Compl. ¶¶ 1, 20.) Many of Moe's restaurants have replaced traditional soda fountains with touch-screen Coca-Cola "Freestyle" machines. (Am Compl. ¶¶ 2, 4.) Freestyle machines are self-service, automated machines that permit customers to choose from more than 100 Coca-Cola beverages by using a touch-screen interface. (Am Compl. ¶ 40.) Because the Freestyle machines lack "adaptive features, such as a screen reader with audio description[s] or tactile buttons used to control commands" blind people are unable to use them independently. (Am. Compl. ¶ 44.) Plaintiffs also allege that Moe's fails to provide assistance in using the machines.

While Plaintiffs, who are blind, have patronized several Moe's restaurants where Freestyle machines have replaced traditional beverage dispensers, they asked for assistance only once. (Am Compl. ¶ 58.) Specifically, on April 2, 2015, Plaintiffs, accompanied by a guide dog, purchased soda at a Moe's in Manhattan. (Am Compl. ¶¶ 17, 19.) According to Plaintiffs, they "requested assistance after receiving a plastic cup for their purchase of soda, but [were] only directed to the location of the Freestyle machine." (Am Compl. ¶ 58.) No Moe's staff assisted them in using the Freestyle machine to choose and dispense soda. Eventually, Plaintiffs were assisted by another customer. (Am Compl. ¶ 21.)[1]

---

[1] Plaintiffs also submit the Declaration of Mary West (ECF No. 27), which supplements allegations regarding the April 2015 visit. But "a complaint cannot be amended by materials outside the pleadings for the purposes of a Rule 12(b)(6) motion." Saleh v. United States, No. 12-cv-4598, 2013 WL 5439140, at *3 n.2 (S.D.N.Y. Sept. 27, 2013).

LEGAL STANDARD

"In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111–12 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Ultimately, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quotation marks omitted). "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (citation omitted).

DISCUSSION

I.  Americans with Disabilities Act Claim

"To state a claim under Title III, [a plaintiff] must allege (1) that [they are] disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [the plaintiff] by denying [] a full and equal opportunity to enjoy the services defendants provide." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008). Moe's does not dispute that the first two elements are satisfied, but argues that Plaintiffs have failed to plausibly allege that Moe's

3

does not provide blind individuals with auxiliary aids or services to assist with beverage dispensers.

A. <u>Auxiliary Aids and Services</u>

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Section 12182(b)(2) then sets forth a number of "[s]pecific prohibitions," including "a failure to take steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of <u>the absence of auxiliary aids and services</u> unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added).

Moe's argues that Plaintiffs' claims are governed by the ADA's auxiliary aids and services requirement. While Plaintiffs do not dispute this point, their Amended Complaint alleges that Moe's is required to provide blind individuals with the ability to use their Freestyle machines independently because "independently operating and using the Freestyle is part of [the] entire experience." (Am Compl. ¶ 53.) Specifically, Plaintiffs assert that Defendant is required to deploy "technology, such as the technology in use at blind accessible [automated teller machines ("ATMs")], which makes use of tactile controls and auxiliary aids." (Am Compl. ¶ 86.) Moe's disagrees.

4

"Auxiliary aids and services" are defined to include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments" as well as "modification of equipment or devices."  42 U.S.C. § 12103(1)(B)–(C).  "Qualified reader means a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary."  28 C.F.R. § 35.104.  The Department of Justice's implementing regulations offer additional guidance regarding the ADA's auxiliary service requirements:

> The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu.

28 C.F.R. § Pt. 36, App. C; see also Camarillo v. Carrols Corp., 518 F.3d 153, 157 (2d Cir. 2008) ("While restaurants are not necessarily required to have on hand large print menus that [plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who . . . are legally blind.").  The ADA and its governing regulations explain the importance of context when deciding the appropriate nature of auxiliary aids and services:

> The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication.

5

28 C.F.R. § 36.303(c)(1)(ii).[2]

Plaintiffs distinguish use of a Freestyle machine from reading a menu or a wine list because Moe's has "voluntarily enter[ed] the digital platform" and therefore should make use of digital technology to facilitate independent use. (Plaintiffs' Br. at 11–12.) By insisting that Freestyle machines implement technology mandated for ATMs, Plaintiffs focus on the ADA's regulations' statement that places of public accommodations must take into account a disabled individual's "privacy and independence." 28 C.F.R. § 36.303(c)(1)(ii). However, while the heightened privacy concerns implicated by use of ATMs necessitate full independence,[3] the same cannot be said about beverage dispensers.

Plaintiffs rely on recent Ninth Circuit decisions specifically noting the development of new technologies in fashioning auxiliary aides and services. See Baughman v. Walt Disney World Company, 685 F.3d 1131 (9th Cir. 2012) (requiring Disney to allow a disabled individual to use a "Segway" rather than a wheelchair, noting that "[a]s new devices become available, public accommodations must consider using or adapting them to help disabled guests have an experience more akin to that of non-disabled guests."); Enyart v. Nat'l Conference of Bar Examiners, Inc., 630 F.3d 1153, 1163 (9th Cir. 2011) (noting that "assistive technology [for test-taking] is not frozen in time: as technology advances, testing accommodations should advance as well."). But these cases do not foreclose the use of

---

[2] See also U.S. DEP'T OF JUSTICE CIVIL RIGHTS DIVISION, Effective Communication, available at http://www.ada.gov/effective-comm.htm (Jan. 2014) ("The key to deciding what aid or service is needed to communicate effectively is to consider the nature, length, complexity, and context of the communication as well as the person's normal method(s) of communication. Some easy solutions work in relatively simple and straightforward situations. For example: In a lunchroom or restaurant, reading the menu to a person who is blind allows that person to decide what dish to order.").

[3] The ADA sets forth specific requirements regarding ATMs. See 36 C.F.R. § Pt. 1191, App. D § 707.

"qualified readers" as an option for Moe's to facilitate effective communication of patrons' beverage options. To the contrary, ADA regulations make clear that restaurants are permitted to use qualified readers to assist visually-impaired patrons with menu selections.

Nothing in the ADA or its implementing regulations supports Plaintiffs' argument that Moe's must alter its Freestyle machines in a way that allows blind individuals to retrieve beverages without assistance.  Reasonable businesses, aided by counsel, could navigate through all of the ADA's relevant regulations and never reach the conclusion that Freestyle machines violate federal law.  And given the labyrinth of city, state, and federal regulations, it is not appropriate for this Court to announce new ones.  Plaintiffs may be correct that technological additions to the Freestyle machines are both feasible and preferable.  However, under the ADA, effective assistance from Moe's employees acting as "qualified readers" is sufficient.

   B.  Plaintiffs' April 2015 Visit to Moe's

Even rejecting Plaintiffs' argument that Moe's should be required to implement specific technology, Plaintiffs allege that they requested, and were denied, auxiliary aids and services during their April 2, 2015 visit.  Specifically, Plaintiffs assert that they visited a single Moe's restaurant with a guide dog, requested assistance with the Freestyle machine after purchasing a soda, and were denied assistance by Moe's employees.

The Second Circuit's decision in Camarillo v. Carrols Corp., 518 F.3d 153 (2d Cir. 2008) is instructive in evaluating the sufficiency of these allegations.  The plaintiff in Camarillo, who was also visually impaired, "frequently patronize[d]" restaurants owned by the defendants; "when she . . . asked for employees to read the menu items, she [was] made fun of, stared at, and forced to wait until other customers behind her in line were served."  518 F.3d at

7

154. The entire menu was not read to her. Camarillo, 518 F.3d at 154. In finding that the plaintiff stated an ADA claim, the Second Circuit focused on the following allegations: that defendants' failure to provide service occurred "on multiple visits"; that employees "'often' responded with annoyance or impatience"; and that these incidents constituted "more than one or two isolated mistakes." Camarillo, 518 F.3d at 156-57. Based on these allegations, the Court of Appeals found "a reasonable inference [could] be drawn . . . that defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals." Camarillo, 518 F.3d at 157.

Here, by contrast, Plaintiffs' allegations hinge on a single visit to a Moe's restaurant, where they received assistance from a customer, not a restaurant employee. From that isolated incident, no reasonable inference can be drawn that Moe's fails to train its employees to provide effective auxiliary aids and services. See Stephens v. Shuttle Associates, L.L.C., 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008) ("Even assuming the allegations in [plaintiff's] Amended Complaint are true and drawing all reasonable inferences in her favor, based only on one isolated incident [plaintiff] has alleged no set of facts to indicate that . . . Defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals."); see also Camarillo, 518 F.3d at 517 (agreeing "that legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities."). Accordingly, Plaintiffs do not state a claim under the ADA.

II.  NYSHRL and NYCHRL Claims

The Amended Complaint alleges supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL claims. (Am Compl. ¶ 14.) "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). Accordingly, this Court declines to retain supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c)(3). See Bacon v. Walgreen Co., 91 F. Supp. 3d 446, 453 (E.D.N.Y. 2015).

III.  Leave to Replead

Federal Rule of Civil Procedure 15(a) "declares that leave to amend 'shall be freely given when justice so requires . . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). "[L]eave may be denied where amendment would be futile." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015).

Here, as discussed above, Plaintiffs cannot state an ADA claim based on a single visit to a Moe's restaurant. Plaintiffs amended their complaint after previewing the arguments Defendant intended to raise at a pre-motion conference. (See ECF No. 14 (Jun. 18, 2015 letter from Defendant's counsel outlining grounds for dismissal.) And nothing in the Declaration of Mary West would alter this Court's analysis, even if it had been incorporated into the Amended Complaint and considered on this motion. Nevertheless, if Plaintiffs wish to replead their ADA claim, they may do so within 45 days of this Order.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' ADA claim is granted without prejudice, and this Court declines supplemental jurisdiction over Plaintiffs' New York State Human Rights Law and New York City Human Rights Law claims. The Clerk of Court is directed to close this case.

Plaintiffs may replead their claims within 45 days of this Order.

Dated: December 9, 2015
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies to All Counsel of Record via ECF.*